**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

ROBERT COBURN                                    CIVIL ACTION NO.5: 09-cv-01970

VERSUS                                                    JUDGE ELIZABETH ERNY FOOTE

CITY OF BOSSIER CITY AND                    MAGISTRATE JUDGE HORNSBY
AND GEORGE BRICE

## <u>MEMORANDUM OPINION</u>

Before the Court are a Motion for Partial Summary Judgment [Record Document 16] filed on behalf of Plaintiff, Robert Coburn ("Coburn") and a Motion for Summary Judgment [Record Document 24] filed on behalf of Defendants, the City of Bossier City ("the City") and George Brice ("Brice"), deputy chief of the Bossier City Fire Department ("the Fire Department").  Plaintiff, a former emergency medical services shift supervisor for the  Fire Department, seeks judgment as a matter of law that Defendants failed to follow procedural due process requirements applicable to the disciplinary investigation and termination of a classified civil servant as provided by state law.  Defendants oppose Plaintiff's motion and seek summary judgment dismissing Plaintiff's federal and state law claims.  For the reasons enunciated below, Plaintiff's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.  Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## I.    SUBJECT MATTER JURISDICTION

Pursuant to 28 U.S.C. § 1331, the Court has original jurisdiction over Plaintiff's 42 U.S.C. § 1983 claim that he was denied the due process afforded to him by the United States Constitution.   In its discretion, the Court exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims arising under state law.

## II.   PROCEDURAL POSTURE

Prior to filing the instant suit, Plaintiff appealed his termination to the City of Bossier City Municipal Fire and Police Civil Service Board ("the Civil Service Board"), which held an evidentiary hearing prior to rejecting Plaintiff's appeal on July 20, 2009.  Plaintiff then appealed the decision of the Civil Service Board to the 26th Judicial District Court in Bossier Parish, Louisiana, on August 19, 2009, but has not pursued that appeal.[1]  Plaintiff filed this suit on November 25, 2009, claiming that Defendants violated the Fourteenth Amendment of the United States Constitution, Article I, § 2 of the Louisiana Constitution, and Louisiana Rev. Stat. 33:2181, which establishes certain "minimum standards" for fire service employees under disciplinary investigation.[2]   Plaintiff named the City and Brice, both in his official and individual capacities, as defendants and seeks declaratory judgment

---

[1]See Robert Coburn v. City of Bossier City and City of Bossier Municipal Fire and Police Civil Service Board, Suit No. 130,608, 26th Judicial District Court, Bossier Parish, Louisiana.

[2]The Court notes that the title of La. R.S. 33:2181 is "Applicability; minimum standards during investigation; penalties for failure to comply."  However, another statute, La. R.S. 33:2012 is actually entitled "Fire Service Bill of Rights."  La. R.S. 33:2181 is uniformly referenced in the briefs and by fire service employees and departments as the "Firefighters Bill of Rights," inasmuch as it provides procedural rights to service employees during disciplinary investigations.

reinstating him to his position; compensatory damages, including back pay and benefits; and punitive damages against Brice in his individual capacity, attorney's fees, costs and interest.  Defendants filed a general denial, and the filing of the cross motions for summary judgment sub judice followed.  In his motion,  Plaintiff seeks judgment as a matter of law that Defendants violated the Louisiana Constitution and La. R.S. 33:2181. A ruling in Plaintiff's favor under the Bill of Rights would yield in his termination being declared an absolute nullity, as expressly provided in that statute.  See La. R.S. 33:2181(C). Plaintiff seeks reinstatement in accordance with the statute, reserving, however, the rights of the City to commence a proper administrative proceeding against him.   The City seeks summary judgment dismissing all of Plaintiff's claims.

## III.    FACTUAL BACKGROUND

Plaintiff was terminated from his position with the Fire Department on April 16, 2009.  Prior to Plaintiff's termination, Defendant Brice had been informed by Fred Weaver, the Fire Department's EMS chief, that an unusual amount of injectable Benadryl was being ordered to replenish the Fire Department's supply.  Brice instructed Weaver to monitor the Benadryl usage and report back. [See Brice Testimony, Record Document 16-4, p. 2] Weaver kept a log cataloguing Benadryl vials which went unaccounted.   Based upon Weaver's findings, Brice became suspicious of theft.  In response, Brice discussed the matter with the police chief of the Bossier City Police Department, who recommended the supply cabinet where the Benadryl was stored be monitored through the use of a surveillance camera. [See Brice Testimony, Record Document 16-4, p. 3]

Brice proceeded by instructing the Bossier City Marshall's office, which is responsible for the security and monitoring of Fire Department administrative offices, to install a surveillance camera in the supply room. [See Brice Testimony, Record Document 16-4, p. 3]  The camera focused on the cabinet where the Benadryl was stored, and the feed was connected to Brice's computer.[3]   Brice reviewed the surveillance footage occasionally and, on at least two occasions, noticed activity near the cabinet.  Per Brice's instruction, a still photograph and footage were produced by Bossier City's information technology office. [See Brice Testimony, Record Document 16-4, p. 3]

On April 15, 2009, Brice provided the photograph and footage to the Police Department, identified Plaintiff as the suspect pictured, and informed  the police that Plaintiff was scheduled to report to work the following day. [See Brice Testimony, Record Document 16-4, p. 5-6; see also Barclay Testimony, Record Document 16-4, p. 19]

Upon reporting to work the next day, Plaintiff was instructed by Brice to go to the Police Department.  At that time, Plaintiff was unaware of the investigation, his appearance on the footage and the accusations against him.  Brice did not provide Plaintiff with any explanation, nor did he identify who would be interrogating him. [See Brice Testimony, Record Document 16-4, p. 6-7]

---

[3]Defendant Brice testified that the feed was sent to his computer out of necessity because of proximity to the camera; however, Brice also testified that the marshall's office had access to all cameras in the municipal complex, although he did not know whether the marshall's office was also monitoring the feed of this particular camera. Additionally, Bossier City's information technology office, which ultimately made recordings and still photographs from the footage, also had access to the feed. [See Brice Testimony, Record Document 16-4, pp. 3-4]

Prior to being interrogated, Plaintiff was advised of and waived his Miranda rights. [See Barclay Testimony, Record Document 16-4, p. 18]   After approximately two hours of questioning by police detectives, a statement was recorded; however, the entire interrogation was not. [See Barclay Testimony, Record Document 16-4, p. 19; see also Plaintiff's Deposition, Record Document 24-4, p. 5]  The administrative assistant to the fire chief viewed a portion of the interrogation through a one-way mirror and audio feed. [See Caskey Testimony, Record Document 16-4, p. 14]   Plaintiff was not advised, nor aware, of the presence of Fire Department personnel at the time of the interrogation. [See Plaintiff's Deposition, Record Document 16-3, p. 3]

At the conclusion of the police interrogation, Plaintiff was escorted by police back to Brice's office at the Fire Department's central station. [See Plaintiff's Deposition, Record Document, p. 3]   Brice met with Plaintiff and gave him written notice that he was being placed on administrative leave with pay. [See Exhibit RC-6 to Plaintiff's Deposition, Record Document 24-4, p 27]   However, immediately thereafter Brice received a call from the police, advising that they were coming to the Fire Department to arrest Plaintiff for theft and malfeasance in office.[4] [See Brice Testimony, Record Document 24-4, p. 67]   This news prompted Brice to change his mind regarding the leave, so he began to prepare a notice of termination and packet of "standard forms" given to employees facing discipline

---

[4]According to record testimony, the police and fire department offices at issue are part of a municipal complex connected by breezeways.  Defendant Brice testified that five minutes or less elapsed between his receipt of the phone call from police advising of Plaintiff's imminent arrest and the detectives' arrival. [See Brice Testimony, Record Document 16-4, p. 4]

or investigation. [See Brice Testimony, Record Document 24-4, p. 68]  Brice's decision to terminate Plaintiff due to the pending arrest was supported by previous conversations Brice had with the fire chief, the last one of which occurred the day Brice identified Plaintiff to police as the suspect. [See Brice Testimony, Record Document 16-4, p. 9]

During the preparation of the termination notice, the police arrived to arrest Plaintiff for the alleged theft; however, Brice intercepted the detectives, informed them of his intent to terminate Plaintiff and requested the detectives wait to arrest Plaintiff until he could finish paperwork. [See Brice Testimony, Record Document 16-4 p. 9]  Upon finishing the notice of termination, Brice informed Plaintiff that he was being terminated and charged in connection with the missing vials of Benadryl.  Brice asked Plaintiff if there was any reason Brice should not impose discipline for the charges [See Brice Testimony, Record Document 16-4, p. 11].  Brice provided Plaintiff with a written notice of termination, a "BCFD Internal Affairs Investigation Warning," and a copy of La. R.S. 33:2012 and La. R.S. 332181 et seq. [See Exhibits RC-7, RC-8 and RC-9 to Plaintiff's Deposition, Record Document 16-3, p. 8-13]   On the "BCFD Internal Affairs Investigation Warning," Brice identified the "Investigating Officers" as the "BCPD." [See Brice Testimony, Record Document 24-4, p. 68-69]

It is undisputed that Plaintiff was provided all of the documents listed; however, there is some dispute and/or uncertainty regarding the sequence in which Brice provided Plaintiff with documents and asked him whether or not he had anything to say.  For the reasons detailed below, the sequence of these events is irrelevant.

## IV.   SUMMARY JUDGMENT STANDARD

Summary Judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure if the movant shows that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When the moving party does not bear the ultimate burden of persuasion on the claim at issue, they may meet their burden of production by offering affirmative evidence in the form of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials proving that the non-moving party cannot show a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(a).  If the moving party carries its burden of production under Rule 56, the burden shifts to the non-moving party to show that there is a genuine dispute as to material fact for trial, either by pointing to or rehabilitating evidence already in the record, or by offering new evidence. Celotex v. Catrett, 477 U.S. 317, 332-33 (Brennen, J., dissenting).

A genuine dispute for trial exists when a rational trier of fact looking at the record could find for the nonmoving party.  Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Co., 475 U.S. 574, 586-87 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  Though the Court must view the evidence in the light most favorable to the non-moving party, the factual context of the claim is important in determining whether a rational trier of fact could find for the non-moving party. Matsushita Elec. Industrial Co., 475 U.S. at 588.  A fact is only material if it "might affect

the outcome of the suit under the governing law". Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  Thus, the fact must be relevant to legal dispute at issue in order to be considered material.  Id. ("Factual disputes that are irrelevant or unnecessary will not be counted.") If the non-moving party makes an evidentiary showing of a genuine issue of material fact, then the burden shifts again to the moving party to show the inadequacy of this evidence.  Celotex, 477 U.S. at 332. However, if the non-moving party does not carry its burden, the court shall enter summary judgment against them.  Fed. R. Civ. P. 56(a).

## V.   ADVERSE INFERENCE STIPULATION

Defendants argue that pursuant to a stipulation entered into because Plaintiff invoked his Fifth Amendment rights at his deposition, he is now precluded from disputing all factual assertions by Defendants in connection with this motion. Defendants' interpretation of the adverse inference stipulation is overly broad. At the time Plaintiff was deposed by defense counsel, criminal charges were pending against him in connection with the alleged theft of Benadryl from the Fire Department.[5]  During his deposition, Plaintiff asserted his Fifth Amendment privilege against self-incrimination and refused to answer certain questions posed by defense counsel in connection with the missing vials and his statements to the Bossier City Police Department regarding unauthorized use of the drug. In response, the City filed a Motion to Compel Plaintiff to answer the questions in order to maintain this civil suit.  A status conference was held on March 23, 2011, wherein the

---

[5] Court minutes reflect the bill of information filed in State of Louisiana v. Robert Glynn Coburn, Jr., Suit No. 173,226, 26th Judicial District Court, in and for Bossier Parish, Louisiana, was quashed on August 2, 2011.

parties stipulated, for summary judgment purposes, to an adverse inference regarding all questions Plaintiff refused to answer.  The  parties agreed, however, that Plaintiff would not be prevented from presenting "other summary judgment evidence from additional sources (i.e., other than Plaintiff's testimony) on those points." [See Record Document 22]

The City contends that Plaintiff effectively "waived his right to disagree with or challenge any factual allegations made by Bossier City that he has refused to discuss . .;" thus, the Court should accept as the City's version of those facts as undisputed. [See Record Document 24-3]  Plaintiff contends that an adverse inference is irrelevant and inappropriate given that  Plaintiff seeks to be reinstated to the Fire Department, with the City reserving its rights to subject him to an administrative hearing under which he would be afforded the protections found in La. R.S. 33:2181, including the right to answer questions without risk that statements will be used in furtherance of criminal prosecution. [See Record Document 29]

Based upon the reasons stated herein, the effect of the parties' stipulation to an adverse inference is of no moment to the Court's analysis of whether procedural requirements were first, applicable, and second, fulfilled.  Plaintiff's invocation of the privilege centered on questions regarding his use of the drug, an issue inapposite to the procedure followed during the investigation.  Insofar as Plaintiff's testimony regarding police questioning is concerned, there is other evidence before the Court sufficient to establish the procedure utilized, including, for example, the testimony of Detective Barclay. The Court relies on this other evidence in reaching its opinion.

## VI.    FEDERAL DUE PROCESS CLAIMS

Plaintiff's Motion for Partial Summary Judgment is limited to Plaintiff's claims under state law; however, the Defendants' motion seeks summary judgment dismissal of all Plaintiff's claims, including his federal due process claims.  Defendants contend that Brice met with Plaintiff, advised him of the charges, and asked him if he had anything to say in response.  Defendants argue that although informal and brief, this meeting constituted a pretermination hearing sufficient to satisfy the Plaintiff's procedural due process rights. Plaintiff opposes Defendants' motion, arguing that Plaintiff was not given adequate notice and a meaningful opportunity to be heard as required by the jurisprudence interpreting the due process provisions of the United States Constitution.

Procedural due process claims require a two-part analysis.   The Court must determine: 1) whether plaintiff has a liberty or property interest whose deprivation requires that he be afforded due process; and, 2) if plaintiff does have such an interest, what process is due.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).  Neither party disputes that Plaintiff was under the civil service scheme and, thus, had a property interest in his continued employment.   Accordingly, the only question is whether Plaintiff was afforded all process to which he was entitled.

At its core, due process requires notice of the charges brought and an opportunity to be heard.  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950).  However, due process is "flexible and calls for such procedural protections as the particular situation demands."  Gilbert v. Homar, 520 U.S. 924, 903 (1997) (citation omitted).  Following the

principle that due process is a flexible concept, the Supreme Court has held that a tenured public employee is only entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," as opposed to a full pre-termination adversarial hearing. Loudermill, 470 U.S. at 546. Pointing out that the plaintiff was entitled to a full post-termination administrative hearing, the Loudermill Court explained that a pre-termination hearing does not need to be elaborate:

> ...the pre-termination hearing need not definitively resolve the propriety of the discharge.  It should be an initial check against mistaken decisions-essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

Id. 470 U.S. at 545-46.  The Court further explained that "an informal hearing which allows the employee to give his version of the facts sufficiently hedges against an erroneous dismissal and likewise satisfies the requirements of due process...." Id., 470 U.S. at 546.

The Fifth Circuit applied Loudermill's holding in Browning v. City Odessa, Texas, 990 F.2d 842, 844 (5th Cir. 1993).  In Browning, a firefighter who had been disciplined numerous times for insubordination, conduct unbecoming of a firefighter, and failure to follow orders was terminated after a meeting lasting thirty minutes with his superior officer. Browning, 990 F.2d at 843.  Plaintiff's termination was stayed after the City's personnel manager insisted on a more formal pre-termination hearing.  The Fifth Circuit held that the first (informal) hearing between plaintiff and his supervisor satisfied due process even though it only lasted thirty minutes, because plaintiff was given prior notice of his possible

termination, the reasons he was being terminated, an opportunity to respond, and the right to an elaborate post-termination hearing, of which plaintiff did not avail himself.  Id. 990 F.2d at 844-45.

The City contends the Browning case involves a set of facts wherein procedures similar to those used by Defendants were employed; thus, the Court should find in favor of the Defendants.  However, the Browning case is distinguishable.  Although Browning's superior advised him of the termination recommendation on the same day as the informal hearing, the plaintiff in Browning was clearly on notice of the policy violations at issue prior to the meeting, as those violations were the subject of at least one of his four prior suspensions as well as ongoing dialogue between plaintiff and his superior officers regarding his unacceptable conduct.

In the instant case, there is no evidence before the Court that Plaintiff Coburn had received any prior warnings or previous discipline for this or any other offense.  While there is a dispute as to the sequence in which Brice handed Plaintiff various documents, there is no dispute that Plaintiff was given notice and the opportunity to be heard essentially simultaneously with the termination.  Brice testified that upon being informed of the police's intent to arrest Plaintiff, he immediately prepared a notice of termination.  Brice further testified that within five minutes or less of receiving the call from police, the police arrived, he intercepted them, informed them of his "plan" to fire Plaintiff and the need for additional time to prepare paperwork.  The Defendants' argument that Brice then held a meaningful predisciplinary conference with Plaintiff, who had been given adequate notice of the

charges, is near disingenuous and unsupported by the jurisprudence.  See  Brown v. Texas A&M University, 804 F.2d 327 (5th Cir. 1986), holding notice adequate for due process purposes where employee had multiple meetings with supervisors over a period of two months which focused on proposed termination; see also Samuel v. Holmes, 138 F.3d 173 (5th Cir. 1998), holding notice inadequate for due process purposes where employee received first notice of possible termination twenty minutes prior to meeting.

Based upon the foregoing, the Court finds Defendants are not entitled to dismissal of Plaintiff's claims arising under the due process protections guaranteed by the United State Constitution as a matter of law and that portion of Defendants' Motion for Summary Judgment is **DENIED**.

## VII.   STATE DUE PROCESS CLAIMS

In addition to Plaintiff's claim of Fourteenth Amendment violations, the Court must analyze the applicability of procedural due process protections afforded by Article I § 2 of the Louisiana Constitution and Louisiana Rev. Stat. 33:2181.

### A.      Louisiana Due Process Clause

The due process afforded Louisiana citizens in Article I § 2 of the Louisiana Constitution parallels the due process clause of the federal Constitution; thus, the Court's analysis of the summary judgment evidence presented by the parties is similar to the preceding analysis set forth herein above.  See Progressive Sec. Ins. v. Foster, 711 So. 2d 676, 688 (La. 1998).   The Louisiana Supreme Court has recognized that the "central meaning of procedural due process is well settled.  Persons whose rights may be affected

are entitled to be heard; and in order that they may enjoy that right, they must first be notified." See Wilson v. City of New Orleans, 479 So. 2d 891, 894 (La. 1985). The court went on to recognize that the right to notice and opportunity to be heard must be extended at a meaningful time and in a meaningful manner. See Moore v. Ware, 01-C-3341 (La. 2/25/03), 839 So. 2d 940 , citing Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

Given the sworn testimony of Defendant Brice as detailed above, the Court finds no genuine issue of material fact exists as to the Defendants' denial of adequate notice and a meaningful opportunity for Plaintiff to be heard in connection with his termination. Therefore, Plaintiff's Motion for Summary Judgment with regard to his due process clause under the Louisiana Constitution is **GRANTED**; and Defendants' Cross Motion for Summary Judgment seeking dismissal of this claim is **DENIED**.

### B.    Louisiana Revised Statute 33:2181

La. R.S. 33:2181 outlines the minimum standards which must be accorded a fire employee who is "under investigation." Act 328 of 2009 amends La. R.S. 33:2181(B); however, the investigation and termination at issue in this litigation occurred prior to the effective date of Act 328; thus, the Court will consider the text of the statute as it appeared prior to the 2009 amendments:

> B.    Whenever a fire employee is under investigation, the following minimum standards shall apply:
>
> (1) The fire employee being investigated shall be informed at the commencement of interrogation of the nature of the investigation, of the identity and authority of the person

conducting such investigation, and of the identity of all persons present during such interrogation. The fire employee shall be allowed to make notes.

(2)  Any interrogation of a fire employee in connection with an investigation shall be for a reasonable period of time and shall allow for reasonable periods for the rest and personal necessities of such fire employee.

(3)  All interrogations of any fire employee in connection with the investigation shall be recorded in full. The fire employee shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his or her statements, upon request.

(4)  The fire employee shall be entitled to the presence of his or her counsel or representative, or both, at the interrogation in connection with the investigation.

(5) The counsel or representative for the fire employee under investigation may call witnesses to testify on the employee's behalf.

(6) No statement made by a fire employee during the course of an administrative investigation shall be admissible in a criminal proceeding.

Louisiana Rev. Stat. 33:2181(B).

### 1.)   What is the meaning of  "under investigation" in the context of La. R.S. 33:2181(B)?

It is undisputed that the statute is triggered only when a fire employee is "under investigation."  This is evidenced by the first sentence of Subsection B, as well as the definition of "fire employee," which includes "any person employed in the fire department...who is under investigation with a view to possible disciplinary action, demotion, or dismissal." La. R.S. 33:2181(A)(1).  "Investigation" is not a defined term.

Defendants, in furtherance of the argument that La. R.S. 33:2181 is inapplicable, contend that for purposes of the statute, an "investigation" connotes a formal proceeding such as an internal affairs investigation.  Defendants do not cite any authority for this proposition; however, they point to the recent amendment's inclusion of the term "formal investigation" in Subsection 2181 (B)(1), which reads as follows:

> B.  Whenever a fire employee is under investigation, the following minimum standards shall apply:
>
> (1) Prior to commencing a formal investigation of a fire employee, the appointing authority shall notify the employee in writing of the nature of the investigation, of the identity and authority of the person conducting such investigation, and of the specific charges or violations being investigated.

La. R.S. 33:2181(B)(1), as amended.

Defense counsel is correct in that the recent amendments provide guidance; however, the Court disagrees that the Legislature intended the minimum requirements to apply only to formal investigations.  The new notice provision provides that "whenever a fire employee is under investigation," he shall be given written notice of the "nature of the investigation," the "identity and authority of the person conducting the investigation," and the "specific charges or violations being investigated" - all prior to the commencement of a formal investigation. Id. [Emphasis added.]  Thus, this statute clearly contemplates that an investigation which carries the risk of adverse employment action, in reality, develops in stages.  The employee is entitled to know what is happening before the formal stage begins.  This conclusion is bolstered by the amendment's definition of the term "interrogation," which reads as follows:

> (2) "Interrogation" includes but is not limited to any formal interview, inquiry, or questioning of any fire employee by the appointing authority or the appointing authority's designee regarding misconduct, allegations of misconduct, or policy violation.  An initial inquiry conducted by the fire employee's immediate supervisors shall not be considered an interrogation.

La. R.S. 33:2181(A)(2).  Because many of the minimum requirements in the statute apply specifically to interrogations, we can conclude that when questioning rises to the level of an interrogation, as defined, the employee is "under investigation" for purposes of the statute.  As seen in the definition, a supervisor's "initial inquiry" may not be considered sufficient to activate the statutory requirements; however, interrogations are not limited to questioning in a formal setting. Thus, the Court's own initial inquiry begins with whether Plaintiff was "under investigation" pursuant to La. R.S. 33:2181.

### 2.)   Was Plaintiff "under investigation" by the Fire Department?

Plaintiff contends that he was under investigation by the Fire Department on April 15, 2009, the day prior to his termination, when Brice:

> (1) provided police with the still photograph and video clips produced by the surveillance footage;
>
> (2) identified Plaintiff as the suspect seen on the photograph and footage; and,
>
> (3) made arrangements for police to interrogate Plaintiff when he returned to work the following day.

Essentially, Plaintiff argues, the investigation was under Brice's direction even though the police performed the actual questioning.  Alternatively, Plaintiff argues that, at the very latest, he was "under investigation" the following day when he was escorted back to the Fire Department after police questioning and given notice that he was on administrative

leave until the fire chief could review the findings of the police department's investigation.

Defendants, on the other hand, contend that Plaintiff was never under investigation by the Fire Department as this was entirely a "police matter," rendering  La. R.S. 33:2181 inapplicable.   In brief, defense counsel represents to the Court that it was the police department's decision to install a surveillance camera in the supply closet.  The Court notes, however, that this representation does not comport with the facts of the case.  Brice's own sworn testimony establishes that the chief of police recommended the Fire Department install a surveillance camera in the supply closet, but that Brice himself, not the police, instructed the Bossier City Marshall's Office to install the camera.   Brice explains that he monitored the footage because of a technical requirement due to the proximity of the camera to Brice's desk; however, Brice also testified that others had access to the feed, namely the information technology office and possibly the marshal's office.  Defendants also point to the fact that the fire chief never ordered an investigation into the missing drugs, and the Fire Department's internal affairs office never conducted an investigation of Plaintiff.

The Court is unpersuaded by Defendants' argument that Plaintiff was not under investigation by the Fire Department.   First, the fact that the fire chief never ordered an investigation by internal affairs is not dispositive of the issue at hand, as the statute clearly encompasses more than just formal investigations.  Secondly,  Brice's own sworn testimony establishes that he ordered a log be kept tracking the count of Benadryl vials which went missing; became suspicious of theft; ordered the marshal's office to install a surveillance

camera in the supply room; monitored the surveillance footage in his office; identified the suspect on the footage as Plaintiff; provided the police with a still photograph, footage, and the log; then arranged for the police to interrogate Plaintiff upon his return to work. At the time of the police interrogation, an assistant to the fire chief listened in on the interrogation without the Plaintiff's knowledge.  Finally, there is a noticeable absence of any evidence that would support the contention that the police were actually conducting any investigation of their own.  In fact, until the questioning of Plaintiff, the police department's only role in the investigation, if it can be characterized as such, appears to be the suggestion to Brice that a surveillance camera in the supply room would be useful for identifying a suspect.  Thus, the record is replete with evidence of the Fire Department's investigation of Plaintiff through the actions of Weaver and Brice, but void of any evidence suggesting the police themselves took any action whatsoever until Brice turned over the footage and Plaintiff for questioning. It was not until this time that one of the interrogating detectives even learned of this alleged "police matter." [See Barclay Testimony, Record Document 16-4, p. 18]  The Court therefore finds that this investigation, with the exception of the actual questioning of Plaintiff, was conducted by the Fire Department.

### 3.) Did Plaintiff face possible disciplinary action, demotion, or dismissal?

At the time Brice sent Plaintiff to the police department for questioning, Brice and the fire chief had already discussed the likely termination that awaited any employee guilty of theft of Benadryl.  Brice testified that the last of these conversations was the day he identified Plaintiff as a suspect to police.  Thus, Plaintiff undoubtedly faced disciplinary

action.  Having determined that Plaintiff was an employee under investigation by the Fire Department and facing potential disciplinary action, the Court must next determine whether Plaintiff was in fact afforded the protections mandated by La. R.S. 33:2181.

### 4.)   Did the investigation meet the minimum procedural standards provided in La. R.S. 33:2181?

La. R.S. 33:2181(B) enumerates the specific procedural safeguards which must precede and accompany an interrogation of the employee.  The violation of any of the six enumerated procedural safeguards is sufficient to declare the Plaintiff's termination from the fire department an absolute nullity.  This Court finds that five of the six enumerated procedural safeguards were violated and now turns its discussion to each of the safeguards.

### (a)   La. R.S. 33:2181(B)(1)

Under La. R.S. 33:2181(B)(1), the employee must be informed in writing of the following:

> (1)   the identity and authority of the person conducting such investigation;

> (2)   the identity of all persons present during such interrogation;

> (3)   the specific charges or violations being investigated.

See La. R.S. 33:2181(B)(1).

Defendant Brice testified that he ordered Plaintiff to report to the police station, but did not provide any explanation or identify the police conducting the investigation. [See Brice Testimony, Record Document 16, p. 7].  Without Plaintiff's knowledge, the administrative assistant to the fire chief viewed a portion of the interrogation through a one way mirror and audio feed. [See Caskey Testimony, Record Document 16-4, p. 14].   The

evidence therefore shows that Plaintiff was provided no notice, much less the written notice required by the statute, of the identity and authority of those conducting the investigation, the identity of all persons present during the interrogation, or the specific charges being investigated.  The Court therefore finds no genuine issue of material fact as to the Defendants' violation of La. R.S. 33:2181(B)(1), and the Plaintiff is entitled to judgment as a matter of law to that effect.

### (b)   La. R.S. 33:2181(B)(2)

La. R.S. 3:2181(B)(2) requires that any interrogation of a fire employee shall be limited to a reasonable period of time and allow for "reasonable periods of rest and personal necessities" of the fire employee.  The Plaintiff has put forth no evidence that he was not afforded such reasonable periods of rest and other accommodation.  Therefore, the Court finds no genuine issue of material fact that this procedural safeguard was not violated. Therefore, Defendant is entitled as a matter of law to a dismissal of this cause of action by the Plaintiff.

### (c)   La. R.S. 33:2181(B)(3)

La. R.S. 33:2181(B)(3) requires that all interrogations of any fire employee in connection with the investigation shall be recorded in full.  In the instant case, one of the police officers conducting the interrogation testified that only a statement given by Plaintiff after questioning was recorded. [See Barclay Testimony, Record Document 16-4, p. 19] The Court therefore finds no genuine issue of material fact as to the Defendants' violation of La. R.S. 33:2181(B)(3), and the Plaintiff is entitled to judgment as a matter of law to that

effect.

**(d)    La. R.S. 33:2181(B)(4)**

La. R.S. 33:2181(B)(4) requires that the fire employee is entitled to the presence of counsel or a representative, or both, at the interrogation in connection with the investigation.  Although the record is clear that the Plaintiff never requested counsel or a representative, the Plaintiff was given no warning as to the fact or nature of the investigation in advance of the interrogation.   The failure to give the Plaintiff notice effectively deprived him of the right to counsel or a representative.  The Court therefore finds no genuine issue of material fact exists as to the Defendants' violation of La. R.S. 33:2181(B)(4), and the Plaintiff is entitled to judgment as a matter of law to that effect.

**(e)    La. R.S. 33:2181(B)(5)**

La. R.S. 33:2181(B)(5) allows the Plaintiff, his representative, or attorney, to call witnesses to testify on the employee's behalf.  In the instant case, as noted above, the Plaintiff was given no advance warning as to the fact or nature of the investigation in advance of the interrogation.  Therefore, the lack of notice effectively denied the Plaintiff of the right to call witnesses.  The Court therefore finds no genuine issue of material fact exists as to the Defendants' violation of La. R.S. 33:2181(B)(5), and the Plaintiff is entitled to judgment as a matter of law to that effect.

**(f)    La. R.S. 33:2181(B)(6)**

La. R.S. 33:2181(B)(6) states that no statement made by a fire employee during the course of an administrative investigation shall be admissible in a court proceeding.  In the

instant case, based upon the statements made by the Plaintiff during the interrogation, the police charged the Plaintiff with felony theft and malfeasance in office.  The Court therefore finds no genuine issue of material fact exists as to the Defendants' violation of La. R.S. 33:2181(B)(6), and the Plaintiff is entitled to judgment as a matter of law declaring his termination from the Fire Department an absolute nullity.

## VIII. REMEDIES

The Court cannot make any statement as to the relief to which Plaintiff is entitled without further evidence and guidance by the attorneys. The following remarks will give the attorneys and the parties insight into the Court's appreciation of the current law in this area. Although the analysis of whether a due process violation occurred is similar under federal and Louisiana law, the  remedies for such violations are clearly different. For example, while 42 U.S.C. § 1983 provides damages for violations of federal due process, violations of the state law rights at issue yield absolute nullities.  Civil service employees who have been illegally dismissed are clearly entitled to reinstatement, subject to the reservation of all rights of the employer to commence proper administrative procedures. See Hermann v. New Orleans Police Dept., 113 So. 2d 612 (La. 1959).

Plaintiff also seeks full back-pay and benefits from the time of his termination forward.   Plaintiff's counsel directs the Court to various Louisiana Supreme Court and Circuit Court of Appeal decisions that illustrate the remedy applied to due process violations.  In Hermann, the Supreme Court noted:

> . . . where the facts show that the mandate of the law was
> not followed, the employee's services were never lealy
> terminated and therefore such employee's status as a civil
> service servant was never terminated; hence he was entitled
> to receive payment of his salary during the period of time.

Hermann, 113 So. 2d at 617-618.  See also State ex rel. Boucher v. Heard, 228 La.

1078, 84 So. 2d 827 (1955); State ex rel. Anderson v. Walker, 230 La. 816, 89 So. 2d

324 (1956); Day v. Dept. of Institutions, 231 La. 775, 93 So. 2d 1; State ex rel. Boucher

v. Heard, 232 La. 499, 94 So. 2d 451 (1957).

      To counter Plaintiff's argument, Defendants cite Hill v. City of Pontotoc, 993 F.2d

422, 425-426 (5th Cir. 1993). Defendants conclude that, in light of Plaintiff's conduct

(which Defendants define as "stealing and using drugs while on duty"), Plaintiff's

termination was justified; therefore, Plaintiff is precluding from recovering anything

more than nominal damages.  [See Record Document 26, p. 9]

      The Court takes judicial notice of the dismissal of the criminal charges against

Plaintiff and points out that testimony from two other Fire Department employees

suggested that personal use of medication while on duty was an accepted custom or

practice. [See Teutsch and Funderburk Testimony, Record Document 27-2]  The number

and value of the vials used by Plaintiff also appears to be in dispute.  These facts are

material to a determination of whether Plaintiff's termination was justified; therefore, the

Court cannot make a summary judgment finding on that issue.

      In any event, as the Hill case illustrates, the justification underlying Plaintiff's

termination has relevance in connection with damages sought under Section 1983, relief

which Plaintiff does not seek in its motion sub judice.  Even where just cause may have

existed, the presence of state constitutional violations in the termination procedure

mandate back pay and benefits in full, since those violations render the termination an

absolute nullity.  See La. R.S. 33:2181(C); See also Hermann, 238 La. at 97, 113 So. 2d

at 617-618 (on rehearing).

The Court notes the decisions in Simien v. City of San Antonio, 809 F.2d 255 (5th

Cir. 1987) and Wilson v.Taylor, 658 F.2d 1021 (5th Cir. 1981), wherein employees were

not awarded back pay and benefits for the time periods between procedurally improper

discharges and subsequent, procedurally proper hearings.  In each, the justification and

resulting affirmation of the initial decision to terminate supported a finding that lost

wages were not caused by a federal due process violation.  In the present case, unlike

Simien and Wilson, it is not apparent that the Civil Service Board would have affirmed

the Fire Department's decision had Plaintiff's due process rights during the investigation

been respected.  Plaintiff was subjected to questioning without proper notice and then

his statements were used to form the basis of criminal charges, another violation of

Louisiana's minimum standards statute.  Because of the then-pending criminal charges,

Plaintiff was prevented from giving any testimony at the Civil Service Board hearing

without risking self-incrimination.  Thus, the procedures utilized by Defendants in the

present case has effectively twice denied Plaintiff an opportunity to respond to the Fire

Department's allegations.  Defendants cannot now shield themselves from back pay

liability with the conclusory statement that Plaintiff, who has never been convicted of

any crime nor able to testify on his own behalf to the Civil Service Board, was terminated for cause.  The issue of cause could, of course, be properly adjudicated by the Civil Service Board if, and only if, Defendants institute disciplinary proceedings in which Plaintiff is afforded all protections to which he is entitled under state and federal law.

In summary, the remedies to which the plaintiff may be entitled is NOT the subject of this opinion..

## IX.    CONCLUSION

The Plaintiff's Motion for Summary Judgment is **GRANTED** insofar as it pertains to his claims under the due process protections afforded by the Louisiana Constitution and the minimum standards set forth in  La. R.S. 33:2181(B)(1)(3)(4)(5)(6).  The Plaintiff's Motion for Summary Judgment is **DENIED** insofar as it pertains to La. R.S. 33:2181(B)(2).  The Defendants' motion seeking dismissal of Plaintiff's claim pursuant to La. R.S. 33:2181(B)(2) is **GRANTED**.  Defendants' Motion for Summary Judgment is **DENIED** on all other grounds.  The Court will set a status conference with the parties in a separate order.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE